## Solomon T. Fish v. Citizens, National Bank, J. S. Norton, Clarence A. Burley, J. W. Howell and Burroughs & Carter Co.

1. BILL FOR ACCOUNTING.—*Does Not Lie Against a Secured Creditor.* —The fact that a creditor takes collateral securities from his debtor to secure his debt, affords no ground for the filing of a bill against him for an accounting by other creditors of the debtor.

**Bill for an Accounting.**—Appeal from the Superior Court of Cook County; the Hon. JOHN BARTON PAYNE, Judge, presiding. Heard in this court at the March term, 1896. Affirmed. Opinion filed June 29, 1896.

MOSES, PAM & KENNEDY, attorneys for appellant.

NORTON, BURLEY & HOWELL, attorneys for appellees.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This was a bill in equity, filed by the appellant for a discovery and accounting concerning certain securities alleged to have come to the hands of the appellee bank in trust, and for an injunction against the prosecution of a certain pending suit at law, brought by the bank against appellant, upon certain drafts accepted by the appellant, and for cancellation of said acceptances, and for a set-off.

The suit at law was upon two certain drafts, for $500 each, drawn by the Burroughs & Carter Company to the order of H. C. Van Dusen, directed to the appellant and accepted by him. The drafts were respectively dated October 30th and November 3, 1888, at thirty days from date.

The appellant was a commission merchant, doing business in Chicago, and the Burroughs & Carter Company was in a like business in Flint, Michigan. The drafts in question were drawn against the price of five car loads of apples sold by the Burroughs & Carter Company to the appellant for $1,142.98, and were discounted on the dates thereof by the appellee bank. Van Dusen, the payee of the drafts, was cashier of the bank.

At the time of the acceptance of the drafts by appellant, the Burroughs & Carter Company was indebted to appellant to the extent of $309.70 on open account, and of $1,026.97 upon acceptances.

It was this indebtedness, aggregating $1,336.67, that appellant sought to have set off against the said drafts accepted by him.

Concerning the circumstances, aside from those mentioned,

upon which appellant bases his claim to equitable relief against the appellee bank, the master to whom the cause was referred to take proofs and report the same with his conclusions, reported that on November 13, 1888, the Burroughs & Carter Company gave a chattel mortgage for $12,000 on all its stock, and also a real estate mortgage for $2,000 to the appellee bank, to secure the bank on paper it had discounted for the Burroughs & Carter Company. That the Burroughs & Carter Company also gave to other parties having claims against it chattel mortgages on its stocks, subject to that of the bank. That after giving said mortgage the Burroughs & Carter Company continued to do business until December 13, 1888, when the bank took possession of the stock of the company under the chattel mortgage, sold the $2,000 real estate mortgage, took an assignment of all the book accounts, and from that date until September, 1889, proceeded to close up the affairs of the company, sell out the stock, collect the outstanding accounts and apply the proceeds toward the payment of the liabilities of the company on the unpaid paper which the bank had discounted for it.

He further reported that at the time of giving said mortgages, the said Burroughs & Carter Company was indebted to the bank as follows :

| | |
|---|---|
| For discounts, | $19,803.21 |
| Notes, | 10,000.00 |
| Interest, | 456.75 |
| Overdrawn account | 1,009.00 |
| Total | $31,268.96. |

That after November 13, 1888, the bank discounted no new paper for the Burroughs & Carter Company, and received on account of the above indebtedness, the following accounts :

| | |
|---|---|
| On paper discounted previous to November 13th | $14,012.30 |
| Total amount realized from B. & C. Co's. stock accounts, etc. | 16,154.27 |
| Total amount chargeable to bank | $30,166.57. |

That of said indebtedness there remains due and unpaid to the said bank, from the Burroughs & Carter Company, the sum of $1,102.30. That there is also due to the said bank $37.83 for expenses on return drafts, and $705.57 for checks paid by the said bank for expenses of the Burroughs & Carter Company after November 13, 1888. That the total amount remaining due and unpaid to the said bank is the sum of $1,845.79. That the drafts accepted by appellant were included in the sum for which the Burroughs & Carter Company gave such security. That the said bank did not recover out of the assets of the Burroughs & Carter Company sufficient to cover the indebtedness of said company to the bank by $1,845.79.

And the master concluded his report with a recommendation that the preliminary injunction be dissolved, and appellant's bill dismissed for want of equity, which was done by the court, and this appeal has followed.

There does not appear to be any substantial disagreement as to the facts so reported by the master. The legal conclusions arrived at by him furnish the main contentions urged by appellant. In saying this, however, notice should be taken of a circumstance proved by the appellant, of which the master made no mention. It was, that Mr. Ives, a lawyer connected with appellant's attorneys, went to Flint some time in the month of December, 1888, three or four weeks after the failure of the Burroughs & Carter Company, for the purpose of seeing what could be done toward securing to appellant a set-off of the amount due appellant from the Burroughs & Carter Company, against the two drafts in question. While there, he saw Mr. Van Dusen, and seems to have been told by him, with a good deal of fidelity, all about the securities held by the bank, and for what purposes such were taken and held.

Appellant's counsel endeavor to argue that as a result of Ives' conversation with Van Buren some duty arose on the part of the bank toward the appellant with regard to the securities it held, but after a careful consideration of all that was testified by Ives, we are unable to find anything that even tends to support the argument.

And in this connection we may say, without reproducing the evidence, that there is nothing in the record upon which to sustain the theory that the appellant was the beneficiary of any trust held by the bank.

The securities given by the Burroughs & Carter Company to the bank were for its benefit alone. The evidence fails to show any semblance of trust for the benefit of any other creditors. Undoubtedly, if a surplus had remained in the hands of the bank after payment of the indebtedness to it, the appellant, or any other creditor of the Burroughs & Carter Company, would have had a remedy at law by garnishment, or in some other proceeding, whereby such surplus could have been reached.

But the master has found that the bank never got its full pay out of the securities.

It is not necessary to go into the details of the evidence upon the accounting that was made, for the purpose of justifying the correctness of the account as stated by the master, for the reason that no case entitling the appellant to an accounting from the bank was made. Merely because one who is a creditor of another, takes collateral securities from the debtor to secure the debt, affords no ground for an accounting in equity between the secured creditor and other creditors of the debtor.

There seems to be no other aspect to this case that requires notice, and the decree of the Superior Court is accordingly affirmed.